**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**RADIX LABORATORIES, INCORPO-
RATED, and Premchand Girdhari, De-
fendants–Appellants.**

Nos. 91–2718, 91–2719.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 22, 1992.

Decided May 14, 1992.

As Amended May 15, 1992.

Glenn Reynolds (argued), O'Brien & Reynolds, Madison, Wis., for defendants-appellants.

Before COFFEY and KANNE, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

Radix Laboratories, Incorporated and Premchand Girdhari, president of Radix Laboratories, Incorporated, pled guilty to and were sentenced on violations of 21 U.S.C. § 331(a), which prohibits the introduction or delivery for introduction into interstate commerce of adulterated or misbranded drugs. Additionally, Girdhari pled guilty to and was sentenced on a violation of 18 U.S.C. § 1001, prohibiting the making of false statements to any department or agency of the United States. Radix Laboratories, Incorporated was fined $50,000. Girdhari was sentenced to a one-year prison term and fined $50,000. Both Radix and Girdhari appeal these sentences. The district court did not abuse its discretion in imposing the sentences, which are well within the statutory maximum, and the government's conduct in this case does not constitute reversible error.[1] We therefore affirm.

## FACTS

From the late 1970s to 1991, Radix Laboratories, Incorporated ("Radix") manufactured and sold animal drug products. Premchand Girdhari was the corporation's president. On January 9, 1991, Radix and Girdhari were charged in a 21–count indictment with one count of conspiring to defraud the Food and Drug Administration ("FDA"), a violation of 18 U.S.C. § 371, four counts manufacturing adulterated animal drugs in violation of 21 U.S.C. § 331(b) and 331(k), ten counts distribution of adulterated animal drugs, violations of 21 U.S.C. § 331(a) and 331(b), four counts dis-

Gregory T. Everts (argued) and Kenneth Jost, Dept. of Justice, Consumer Litigation, Washington, D.C., for plaintiff-appellee.

1. This criminal prosecution was handled for reasons unknown to us by attorneys from the Civil Division of the United States Department of Justice.

tribution of misbranded drugs in violation of the same section and subsections and two counts making false statements to the United States, violations of 18 U.S.C. § 1001.[2] Prior to trial Radix and Girdhari pled guilty but to substantially fewer counts than were charged in the indictment. Radix pled guilty to one count distributing a misbranded drug, a felony violation under 21 U.S.C. §§ 331(a) and 333(b). Girdhari pled guilty to one count of distributing an adulterated animal drug with the intent to defraud and mislead, 21 U.S.C. §§ 331(a), 333(b) and 18 U.S.C. § 2, and he pled guilty to one count of making a false statement to the FDA, a felony violation of 18 U.S.C. § 1001. All of the defendants' offenses occurred prior to November 1, 1987, so the United States Sentencing Guidelines did not apply.

Subsequent to the guilty pleas, the prosecution submitted a letter and exhibits to the probation office detailing the violations to which Radix and Girdhari pled guilty as well as background material concerning the enforcement of FDA regulations and a factual summary of other violations committed by Radix and Girdhari. The defendants were not convicted on the other violations. The probation office included the government's letter in the presentence report. In the letter the government sought to demonstrate that Radix and Girdhari had trampled on and regularly flouted FDA animal drug regulations over a period of several years. The factual summary in the letter was divided into three sections and described events that took place at Radix facilities between 1983 and 1991.

The first section of the factual summary describes events that took place between 1983 to January 1986. During those years, the Radix facility was located on Esmond Road in Eau Claire, Wisconsin. FDA inspections of the Esmond Road facility revealed gross manufacturing deficiencies. After an April 1983 inspection, the FDA concluded that the manufacture of sterile products was virtually impossible at the Esmond Road facility, though Radix prod-

ucts produced there were labeled "sterile." Moreover, Esmond Road production records did not allow the tracking of a particular raw material through the manufacturing process into the hands of the veterinarian customer as required by the Federal Food, Drug, and Cosmetic Act. *See* 21 U.S.C. § 351(a)(2)(B); *see also* 21 C.F.R. 211.80(a) and 211.184. Tracking was impossible at the Esmond Road plant since production records did not exist. It was during this time Girdhari was told by the FDA that if Radix made drugs only for the Eau Claire Animal Hospital, a local hospital which was part owner of Radix at that time, Radix did not need to register with the FDA as a drug manufacturer due to an exemption from registration for veterinarians. *See* 21 C.F.R. 207.10. Girdhari decided to capitalize on the exemption and sell a drug called "Cal–Plex" to a customer in South Dakota. In April 1985 Girdhari claimed he had not sold the product to any customer except Eau Claire Animal Hospital. This false statement provided the basis for Girdhari's guilty plea to one violation of 18 U.S.C. § 1001. The prosecution's letter details numerous other falsehoods Girdhari made to the FDA during inspections in September 1985, November 1985 and January 1986.

Girdhari and Radix dispute little of the government's factual summary of events occurring at Esmond Road: "It is without a doubt that the Esmond Road facility was not appropriate for manufacturing parenteral (injectable) drugs." Moreover, Girdhari does not address the government's assertions concerning falsehoods to the United States other than the one to which Girdhari pled guilty. Consequently, there was little discussion of the 1983 to January 1986 occurrences at the sentencing hearing.

Girdhari and Radix dispute much of the summary regarding the next time period covered in the government's letter, January 1986 to March 1987, after Radix was moved to a new facility at International

**2.** Susan Girdhari, Premchand Girdhari's wife, was also charged on all 21 counts of the indictment. However, all charges against Susan Gir-

dhari were dismissed as part of the plea agreement.

Drive in Eau Claire. The primary basis for the January 1986 through March 1987 summary is four affidavits of former Radix employees. The four employees were hired at different times in 1986. Two of the employees were fired on October 23, 1986. All of the affidavits were taken in January of 1987. The affidavits list dates and details of the defendants' alleged illegal activities between January 1986 and March 1987. Some of the affidavits catalog amounts of illegal drug products made at International Drive. The affidavits were part of the government's full file, which was made available to the probation office but not the defendants. Because the probation office did not request the affidavits, they were not included in the presentence report. The government did not disclose the affidavits to the defendants because the government considered the documents Jencks Act material intentionally held back until seven days before trial, when a pretrial order required disclosure. As the defendants pled guilty in this case, there was no trial. What the defendants did receive was a presentence report containing the prosecution's letter that abstracted eighteen pages of affidavits into twelve short paragraphs comprising three pages. The paragraphs do not reveal which employee supplied the basis for each statement, nor do the statements contain dates or amounts of illegal products produced. In fact, there is no way to connect the twelve short paragraphs with the affiants.

The affidavits were introduced through the testimony of Marlin Bergeson, a Compliance Officer with the FDA. Bergeson testified that he talked to the four employees in February 1990, approximately three years after the affidavits were taken, in order to verify the information in the affidavits. During these conversations, Bergeson took notes. At the hearing Bergeson explained the factual basis of the 12–paragraph summary. First, Bergeson described from employee affidavits two incidents where Mr. Girdhari had mopped up a product which had overflowed a vat and then squeezed the mop out into the vat for further production. Girdhari had admitted to doing this only once. Bergeson then explained the basis for paragraph 2 stating that Girdhari had admitted to the FDA that he was shipping drugs without NADA— Girdhari told FDA investigators during a March 1987 inspection of his practice.[3] As for paragraphs 3, 4 and 6, stating that no production records were kept for products Girdhari considered illegal made between June and December 1986, that Girdhari and his wife manufactured unapproved products on weekends and in the evening to avoid FDA detection, and that Girdhari kept labels and active ingredients for unapproved products in his basement at home instead of at the Radix facility, Bergeson revealed the basis of these paragraphs to be employee affidavits. Immediately after this testimony, the government's attorney invited the court to examine certain portions of each of the four employee affidavits. Bergeson then explained the factual basis of paragraph 7 of the summary stating that Girdhari ordered a product be filled into a group of bottles though one bottle had broken and glass fragments entered the other bottles compromising their sterility; paragraph 8 stating that when a customer returned a product to Radix because it was causing abscesses at the injection site, Girdhari directed his employees to dump the product into a vat to be filtered and then refilled back into the same bottles without testing the product or washing the bottles; and paragraph 9 which states that Girdhari instructed his employees to indicate that a product was destroyed for not meeting specifications when in fact the product was shipped to a customer. All of this information was derived from the employee affidavits. Regarding paragraph 11, Bergeson named the employee who told him on the phone that Girdhari told him (the employee) if an animal died after taking a Radix drug, the farmer would blame the disease rather than the drug. Last, Bergeson explained that the basis of para-

---

**3.** NADA or New Animal Drug Approval is required in order for a new animal drug to be marketed. A new animal drug that is marketed without NADA is adulterated. *See* 21 U.S.C. §§ 360b(a) and 351(a)(5).

graph 12, stating that Radix falsely understated total production of a particular batch of product in order to hide illegal manufacturing, was another employee affidavit.

Defendants' counsel objected to Bergeson's testimony because the affidavits to which Bergeson testified were not turned over until after Bergeson's testimony. Counsel did not request a continuance, but the court took a recess after the government's direct examination of Bergeson. Radix and Girdhari's counsel had approximately 90 minutes to review the affidavits and prepare for cross-examination. During cross-examination, Bergeson admitted that he did not prepare the affidavits and that he was not present when the employees were interviewed by the FDA. Bergeson also admitted that he was aware that the employees had a disagreement with Girdhari that led to them either being fired or quitting and that all of the employees gave statements to the FDA immediately following the end of their employment with Radix. Then, defendants' counsel pointed out that none of the employees' allegations in the affidavits formed the basis of what Girdhari and Radix were convicted of as a result of their plea.

In addition to testifying to the defendants' January 1986 through March 1987 activities, Bergeson also testified to the dollar value of the illegal products Radix sold over a several year period. Bergeson computed the amount to be $96,864, stating that the estimate was conservative as it included sales only to one customer during 1983 to 1986. The defendants contest Bergeson's estimate; they believe they are liable only for the unlawful sales involved in the two counts of the conviction, a total of $3,502.

The third and last time period detailed in the presentence report is March 1987 through 1991. This part of the summary describes "underground dealings" after a major FDA inspection of Radix early in 1987. The government's basis for the information in this section comes from documents and non-employee statements. The government included this section to demonstrate that the defendants' illegal activity continued well after 1987. The primary focus of the information in this section is the defendants' manufacture and sale of products without NADA and CGMP.[4]

## ANALYSIS

The defendants' first and most compelling complaint on appeal concerns the fact that the government refused to turn over the employee affidavits supporting its factual summary of January–1986–to–March–1987 events until the sentencing hearing. The defendants' counsel was then given approximately 90 minutes to review the affidavits before cross-examination of the government witness, FDA Compliance Officer Bergeson, who introduced the affidavits in his testimony. The government reasons that because no statute nor the constitution requires disclosure of the affidavits to the defendants, it was not necessary for the government to do so before the hearing. Moreover, the government points out that the defendants could not have been prejudiced by the government's refusal to turn over the affidavits before the sentencing hearing because there was a 12–paragraph summary of the affidavits in the presentence report, which the defendants received well in advance of the hearing. The government maintains that this summary discharged any duty it may have had to notify the defendants of the contents of the affidavits. Last, the government argues that the defendants could easily, and did, assume that the 12–paragraph summary came from former Radix employees—employees to whom the defendants had access—so it was not unreasonable to expect the defendants to contact former Radix employees themselves if the defendants wanted to know the substance of the employees' statements to the government. To counter these contentions the defendants persuasively argue that although no

---

**4.** CGMP, or Current Good Manufacturing Practice, is required by the Federal Food, Drug, and Cosmetic Act. If a drug is not manufactured in conformity with CGMP it is adulterated. *See* 21 U.S.C. § 351(a)(2)(B).

statute requires that the government turn over the affidavits prior to the sentencing hearing in order to allow defendants an opportunity to review them, fairness seems to compel such a result.

The government is correct that no statute mandates disclosure of the affidavits to the defendants prior to the sentencing hearing. Fed.R.Crim.P. 32(c)(3)(A) provides for disclosure of the *presentence report* at a reasonable time before the court imposes sentence so that the defendant and his counsel may read it and have an opportunity to comment on the report and challenge any inaccuracy. The employee affidavits were not part of the presentence report; therefore, they were not disclosed as part of it. The government stated at the sentencing hearing that the affidavits were Jencks Act material. Under 18 U.S.C. § 3500, commonly known as the Jencks Act, witness statements in the possession of the United States which relate to the subject matter as to which the witness testifies shall be turned over to the defendant for examination and use. Presumably, the employee affidavits would be classified Jencks Act material under 18 U.S.C. § 3500(e)(1), as they are written statements adopted by the employees who would have testified as government witnesses at trial. *See United States v. Allen,* 798 F.2d 985, 993–95 (7th Cir.1986) (defining a Jencks Act statement). The Jencks Act, however, applies to trials, and sentencing hearings are not trials. Whether or not the affidavits were Jencks Act material does not explain why the affidavits were not part of the open file that was to be made available to the probation office and the defendants. At oral argument defendants' counsel stated that the practice of the United States Attorney's Office of the Western District of Wisconsin is to make the full file available to both the defense and the probation office. This case was handled by the Department of Justice out of Washington, D.C. In ruling on a motion for early disclosure of Jencks Act material at the preliminary pretrial conference, the court noted that the government represented that the bulk of Jencks Act and *Brady* material was being produced on a current basis, and that

all such material would be made available, to the extent known to the government, not later than seven days prior to trial. This order may explain why the defendants argued at the sentencing hearing that the government agreed to produce the affidavits before the hearing. Nonetheless, the affidavits were not produced.

■ Since there is no statutory mandate that the government disclose the employee affidavits to the defendants prior to the sentencing hearing, there remains only constitutional requirements of fairness. Due process requires that a convicted defendant be sentenced pursuant to a fair sentencing process. *United States ex rel. Welch v. Lane,* 738 F.2d 863, 865 (7th Cir. 1984). In a sentencing hearing the judge must exercise discretion on the basis of accurate and reliable information. *United States v. Agyemang,* 876 F.2d 1264 (7th Cir.1989) (citing *Welch,* 738 F.2d at 864–65). Although the defendants are entitled to due process protection in the sentencing hearing, they are not entitled to the same degree of process as they would be entitled at trial. *Id.*

■ Furthermore, due process does not preclude the sentencing judge from considering and relying upon evidence of offenses for which the defendant has not been convicted. *United States v. Nowicki,* 870 F.2d 405, 407 (7th Cir.1989) (citing *United States v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978); *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948)). The Federal Rules of Criminal Procedure contemplate that a sentencing judge may consider evidence of offenses that a defendant has committed in addition to charged offenses. And, in the plea agreement signed by Girdhari, defendants' counsel and the prosecutor, the government specifically required Girdhari to acknowledge his understanding that the sentencing court was free to consider his entire pattern of conduct in these cases up to and including the present time. So, absent the possibility the government's conduct caused error, it was not error for

Judge Shabaz to consider the information in the employee affidavits for which the defendants were not convicted.

■ In addition to arguing unfairness, defendants assert that Bergeson's testimony was double hearsay violative of their rights to confrontation. The sentencing judge may also rely on hearsay at sentencing even though the same evidence would be inadmissible at trial. *Nowicki*, 870 F.2d at 407. Defendants put forth *United States v. Fortier*, 911 F.2d 100 (8th Cir. 1990), to hold up their argument that their confrontational rights were violated by Bergeson's testimony. However, that case states that confrontational rights were violated when the district court relied on triple hearsay contained in the presentence report to determine that the defendant possessed an additional 249 grams of cocaine without an independent finding that the hearsay was reliable. Here, the sentencing judge did not rely upon only the 12–paragraph summary in the presentence report; rather, the judge concluded that the employee affidavits were credible and reliable and that Girdhari's lack of credibility weighed against the defendants. The judge made these findings on the record. Plus, defendants' counsel had an opportunity to vigorously cross-examine Bergeson and point out weaknesses in the reliability of the affidavits. Defendants' confrontation argument fails.

■ Having decided that the sentencing judge's reliance on the affidavits was, in absence of the prosecution's conduct, clearly allowable, we address whether the prosecution's holding on to the affidavits until the last minute creates the *appearance* of injustice in the sentencing procedure that requires resentencing in this case. We have recently faced a somewhat similar situation. In *United States v. Connor*, 950 F.2d 1267 (7th Cir.1991), the sentencing judge mentioned material from newspaper clippings sent to him by others that neither the defendant nor the prosecution had seen in order to apply an upward departure from the sentencing guidelines. We emphasized in *Connor* that a sentencing court should take care to insulate itself from ex parte communications when determining a sentence unless the court makes such communications known to the parties. *Connor*, 950 F.2d at 1278. However, we did not have to decide in *Connor* whether appearances required resentencing as resentencing was required for other reasons.

The First Circuit has decided the issue. In *United States v. Curran*, 926 F.2d 59 (1st Cir.1991), the court invoked its supervisory powers under 28 U.S.C. § 2106[5] to reverse a defendant's sentence where the sentencing court relied upon letters from victims containing information not in the presentence report in order to impose a more severe sentence than recommended by the prosecutor. The *Curran* court stated that although supervisory power should be sparingly used, appellate courts "may exercise [their] supervisory power to ensure that the district court, during the sentencing phase of a criminal proceeding, follow[s] 'procedures deemed desirable from the viewpoint of sound judicial practice although in nowise commanded by statute or the Constitution.'" *Curran*, 926 F.2d at 63 (citing *Thomas v. Arn*, 474 U.S. 140, 146–49, 106 S.Ct. 466, 470–72, 88 L.Ed.2d 435 (1985) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973))). *Curran* requires sentencing courts in the First Circuit, whenever those courts consider documents to which Fed. R.Crim.P. 32 does not apply, to either make clear that the document is not being used for its factual content or disclose to the defendant as much as was relied upon with time enough for the defendant to examine and challenge the evidence. *Id.*

Although the facts of the case before us sound somewhat similar to the circumstances in *Connor* and *Curran*, there are significant differences. First, and perhaps

**5.** This section reads:

The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

foremost, the information in the affidavits was not a complete surprise to the defendants. The prosecution summarized the affidavits into 12 paragraphs which were submitted to the probation office and included in the presentence report. Admittedly, each paragraph does not indicate which employee supplied the factual basis for it. Neither are the paragraphs as detailed as the affidavits. And, a few of the paragraphs have a decided slant to them that seemingly mischaracterize the statements in the affidavits. Paragraph 8 is an example:

> 8) On one occasion a customer returned a product to Radix because it was causing abscesses at the injection site. Girdhari directed that the bottles be emptied into a vat, the contents filtered to remove a cloudy substance, and the drug then refilled back into the same bottles, without first washing the bottles or testing the product. The product was then reshipped.

The affidavit statement on which paragraph 8 is based states:

> Approximately 500 unlabeled bottles were returned to the firm because they were causing abscesses at the injection site and were reworked as follows: The bottles were uncapped and poured into two large containers. We were instructed by Mr. Girdhari to resterilize the bottles and told not to waste time by washing them first.

By leaving out the fact the bottles were resterilized, the prosecution's version implies that Girdhari made no attempt whatsoever to clean the bottles, when he did, even if the practice he followed (sterilizing the bottles without washing them first) was not the proper procedure. Despite the fact that the summaries do not present the whole picture, the summaries adequately—though not completely—represent the substance of the affidavits such that the defendants were not unduly prejudiced by receiving the affidavits themselves only 90 minutes before cross-examination of Bergeson.

In addition to the relative lack of surprise in this case as compared to *Connor* and *Curran*, the second significant differ-

ence is the fact that it was the prosecution that withheld information, not the judge. While not precisely on point, we look to cases in which we have discussed the sentencing court's failure to comport with the requirements of Fed.R.Crim.Pro. 32, cases discussing whether a defendant has been deprived of a fair trial when the government is late in disclosing *Brady* material, and cases discussing Jencks Act violations. Analogies can be drawn between these situations and the situation presented in this case. The following cases are examples. In *United States v. Rone*, 743 F.2d 1169 (7th Cir.1984), this court interpreted Rule 32 to impose an affirmative duty on the sentencing judge to ask the defendant whether (1) the defendant has had the opportunity to read the presentence report; (2) counsel and defendant have discussed the report; and (3) defendant wishes to challenge any facts in the report. Subsequent to *Rone*, we stated that resentencing is warranted to allow the defendant to challenge the reliability of the presentence report when the defendant alleges that the sentencing judge failed to ask *Rone* questions and when the defendant identifies facts that would be disputed if defendant was given the opportunity. *See United States v. Rodriguez–Luna*, 937 F.2d 1208, 1213 (7th Cir.1991) (citing *United States v. Brown*, 785 F.2d 587, 592 (7th Cir.1986) (stating that remand is not necessary after Rule 32(a)(1)(A) violation if defendant had ample opportunity to comment concerning only objection)). Also instructive are cases interpreting the scope of the *Brady* rule requiring the prosecution to disclose to the defendant favorable evidence it possesses. This court has stated that *Brady* does not require pre-trial disclosure of the materials, and the appropriate standard of reversal is whether the government's disclosure is so late as to prevent the defendant from receiving a fair trial. *United States v. Williams*, 738 F.2d 172 (7th Cir.1984) (citing *United States v. Sweeney*, 688 F.2d 1131, 1141 (7th Cir.1982); *United States v. McPartlin*, 595 F.2d 1321, 1346 (7th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979)). Finally, we note *United States v. Balistrieri*, 779 F.2d 1191 (7th

Cir.1985), *cert. denied,* 475 U.S. 1095, 106 S.Ct. 1490, 89 L.Ed.2d 892 (1986). In *Balistrieri* we pointed out that when the government fails to produce Jencks Act materials at trial because they have been lost and there is no evidence of the government's bad faith, the sanctions of 18 U.S.C. § 3500(d) are not required.[6] The reasoning behind these cases motivates us to decide that, although the government's conduct in this case was without good reason, it did not violate any statutory mandate nor unduly prejudice the defendant. In circumstances such as these it seems fairer for the government to be more forthright. This was a sentencing, not a trial where ambushes are not unknown. The record does not reveal any evidence of bad faith on the part of the government. If the defendants had no notice of the substance of the affidavits (instead of the 12–paragraph summary) and had no opportunity to examine the affidavits before cross-examination of the government's witness (instead of a 90–minute break) and had no opportunity to cross-examine the government's witness to explore the reliability of the factual basis underlying the government's assertions in the presentence report, our conclusion would most assuredly be different. However, as it was the prosecution and not the court creating the appearance of impropriety in this case, we believe that the defendants must show that the prosecution's conduct was unduly prejudicial to them, especially when that conduct does not violate any statutory mandate and there is no evidence of bad faith, before we will demand resentencing.

The third significant difference between this case and the *Connor* and *Curran* cases is the sentence imposed. This is a pre-Guidelines case. The judge is therefore subject only to the statutory maximums imposed by Congress and the abuse of discretion standard. Sentences imposed within the maximum term provided for by Congress are reviewable in this court only for manifest abuse of discretion. *United States v. Threw,* 861 F.2d 1046, 1049 (7th Cir.1988) (citing *United States v. Ray,* 828 F.2d 399, 425 (7th Cir.1987); *United States v. Mitchell,* 788 F.2d 1232, 1237 (7th Cir. 1986)). Girdhari was exposed to a maximum of an eight-year sentence and a $250,-000 fine for his offenses, while Radix was exposed to a maximum fine of $250,000 for its crime. The sentences imposed by the court, a one-year prison sentence for Girdhari and a $50,000 fine and a $50,000 fine for Radix, were well below the statutory maximum and supported by the evidence. The district court found facts by a preponderance of the evidence that support the sentences imposed in this case, and at a motion hearing after the sentencing, the court explored the defendants' complaints concerning the disclosure (or lack of disclosure) of the employee affidavits. The court found the affidavits to be credible and reliable, noted that it allowed the defendants' counsel time to digest the affidavits before cross-examination of the government's witness, and finally explained that the pretrial order for early disclosure of Jencks Act material did not come into play because the defendants pled guilty on May 8, 1991, substantially prior to the date the pretrial order would have taken effect, as trial was set for June 17, 1991. The record indicates that the sentencing judge did not abuse his discretion or fail to exercise any discretion at all in sentencing the defendants.

The prosecution forthrightly conceded at oral argument that it should have turned over the affidavits to the defendants prior to the sentencing hearing. On the other hand, any issue of prejudice may have been avoided had the defendants' counsel requested a continuance at the hearing after receiving the affidavits in order to have enough time to prepare for cross-examination instead of simply objecting to Bergeson's testimony based on the affidavits. Assuming that Judge Shabaz would have

---

**6.** 18 U.S.C. § 3500(d) states:

If the United States elects not to comply with an order of the court under subsection (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial shall be declared.

granted the continuance, any problems with the affidavits may have been cleared. We said as much in *United States v. Wellman*, 830 F.2d 1453 (7th Cir.1987). In *Wellman* the defendant's counsel did not receive government exhibits used at the sentencing hearing until the night before the hearing, but we determined the trial court cured the supposed problem by granting defendant's counsel's motion for a continuance to respond to the documents. *Id.* at 1469. There was no continuance requested in this case, just an objection to the affidavits, and the circumstances of this case do not require resentencing nor the promulgation of a court imposed procedural rule like that announced in *Curran*.

The defendants' other contentions of error do not merit much discussion. Girdhari and Radix maintain that there were not enough facts in the record to support the sentencing court's findings that Radix sold $96,000 of unlawful products between 1983 and 1987. The sentencing court's factual findings are reviewed for clear error. *United States v. Hubbard*, 929 F.2d 307, 309–10 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991), and *cert. denied, Conrad v. United States,* —— U.S. ——, 112 S.Ct. 309, 116 L.Ed.2d 252 (1991). Although Radix admitted to selling only $3,700 of unlawful products, we have already explained that the court was entitled to consider evidence of other unlawful sales for sentencing purposes. We cannot say after reviewing the record that the sentencing court's findings leave us "with the definite and firm conviction that a mistake has been committed." *United States v. Brown*, 900 F.2d 1098, 1102 (7th Cir.1990) (quoting *Anderson v.*

*City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). This standard also applies to the factual findings Judge Shabaz based on the employee affidavits, which we do not find clearly erroneous.

▮ Finally, the defendants argue that the sentencing court improperly imposed fines on them. To impose a fine for offenses occurring prior to November 1, 1987, the district court must consider at least nine factors under 18 U.S.C. § 3622(a) (repealed Nov. 1, 1986).[7] Defendants maintain that the court did not appropriately consider how the imposed fines would affect Girdhari's family, nor the efforts Girdhari undertook to prevent future FDA violations at the Radix facility. On the contrary, the trial court made a specific finding that the defendants have "the unquestionable ability to pay those fines ... without hardship to ... the individual defendant and his dependents," and record shows that the court adequately considered all other factors under section 3622(a). We note that this court has not in past cases required the district court to make specific findings regarding every factor of section 3622. We have remanded for findings on section 3622 where the district court made *no* findings with respect to *any* of the factors. *See United States v. Masters*, 924 F.2d 1362 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2019, 114 L.Ed.2d 105 (1991), and *cert. denied, Corbitt v. United States,* —— U.S. ——, 112 S.Ct. 86, 116 L.Ed.2d 58 (1991). The Eighth, Ninth, Tenth and Eleventh Circuits have held that district courts are required only to consider the nine factors listed, not to make specific findings on each factor as long as the

---

7. 18 U.S.C. § 3622 reads:

In determining whether to impose a fine and the amount of a fine, the court shall consider, in addition to other relevant factors—(1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the defendant's income, earning capacity, and financial resources; (4) the burden that the fine will impose on the defendant, any person who *is* financially dependent upon the defendant, or any other person (including a government) that would be responsible for the welfare of a person financially dependent on the defendant, relative *to* the burden that alternative punishments

would impose; (5) any pecuniary loss inflicted upon others as a result of the offense; (6) whether restitution is ordered and the amount of such restitution; (7) the need to deprive the defendant of illegally obtained gains from the offense; (8) whether the defendant can pass on to consumers or other persons the expense of a fine; and (9) if the defendant is an organization, the size of the organization, and any measure taken by the organization to discipline any officer, director or employee or agent of the organization responsible for the offense and to prevent the recurrence of such an offense.

**1044**

record is adequate for review. *United States v. Condon,* 816 F.2d 434, 435–36 (8th Cir.1987); *United States v. Weir,* 861 F.2d 542, 545 (9th Cir.1988), *cert. denied,* 489 U.S. 1089, 109 S.Ct. 1555, 103 L.Ed.2d 858 (1989); *United States v. Wright,* 930 F.2d 808, 810 (10th Cir.1991); *United States v. Hooshmand,* 931 F.2d 725, 737 (11th Cir.1991). *See also United States v. Marquez,* 941 F.2d 60, 65 (2nd Cir.1991) (interpreting 18 U.S.C. § 3572, a section similar to section 3622, not to require specific factual findings). *But see United States v. Harvey,* 885 F.2d 181, 182–83 (4th Cir.1989) (interpreting the word "shall" in section 3622 to require specific factual findings to be made for each of the nine factors enumerated in the statute). These cases influence our review of the record here. The record demonstrates that the district court fulfilled the requirements of section 3622, so defendants' appeal on this ground fails.

### CONCLUSION

After much consideration of the defendants' arguments on appeal, we conclude that resentencing is not merited. The sentences imposed by the district court are

AFFIRMED.