NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 11, 2009[*]
Decided March 24, 2009

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 08-2477

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Western District of |
| | Wisconsin. |
| *v.* | |
| | No. 07-CR-66-bbc-01 |
| DANIEL TEPOEL, | |
| *Defendant-Appellant*. | Barbara B. Crabb, |
| | *Chief Judge*. |

**O R D E R**

Daniel TePoel defrauded investors of over $2.5 million by telling them he would invest their money in high-yield, low-risk bank instruments, when in fact he was spending the money on personal expenses and a failed real-estate venture. A federal jury found TePoel guilty of four counts of mail fraud, *see* 18 U.S.C. § 1341, two counts of wire fraud, *see*

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

*id*. § 1343, one count of conspiracy to commit mail and wire fraud, *see id*. §§ 1349, 1341, 1343, and one count of making false statements to an FBI agent, *see id*. § 1001. The district court sentenced TePoel to a total of 136 months' imprisonment, which was in the middle of the guidelines range. We have allowed TePoel to pursue his appeal pro se, and we affirm the district court's judgment.

TePoel does not argue that the government's evidence was insufficient to convict him or that his sentence is unreasonable. Instead, he contends that along the way the district court made a slew of erroneous rulings. First, he takes issue with the court's denial of two motions to dismiss the indictment, where he argued that dismissal was appropriate because the government would not identify the names of the grand jurors who voted to indict him so that he could challenge their qualifications, and that he was the victim of selective prosecution. We will overturn a district court's refusal to dismiss an indictment only if the court abused its discretion. *United States v. Darif*, 446 F.3d 701, 708 (7th Cir. 2006).

Given that a jury found TePoel guilty beyond a reasonable doubt, it is hard to see how errors in the grand-jury process could matter. *See United States v. Mechanik*, 475 U.S. 66, 70-72 (1986); *see also Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988) (holding that errors or defects in grand-jury procedures can result in dismissal of an indictment only if they are prejudicial). Nonetheless, TePoel was not entitled to the names or voting records of the grand jurors. Although criminal defendants generally may inspect grand-jury selection records under the Jury Selection and Service Act, 28 U.S.C. §§ 1861-78, they are not normally entitled to know the names or votes of the individual grand jurors who indicted them. *See United States v. Deffenbaugh Indus., Inc.*, 957 F.2d 749, 755-57 (10th Cir. 1992); *United States v. McLernon*, 746 F.2d 1098, 1122-23 (6th Cir. 1984). The strong interest in secrecy accorded the grand-jury process can be overcome only if the defendant demonstrates with particularity that grounds might exist for a motion to dismiss based on materials concerning the grand jury. FED. R. CRIM. P. 6(e)(3)(E)(ii); *see United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959); *United States v. Hansel*, 70 F.3d 6, 8 (2d Cir. 1995); *In re Grand Jury 89-4-72*, 932 F.2d 481, 489 (6th Cir. 1991); *United States v. Lang*, 644 F.2d 1232, 1238-39 (7th Cir. 1981); *State of Wisconsin v. Schaffer*, 565 F.2d 961, 965 (7th Cir. 1977). TePoel contends that he wanted this information out of a general concern that the grand jurors who indicted him might not be qualified, but this vague grounds for disclosure does not even come close to making the necessary particularized showing. *See Hansel*, 70 F.3d at 8; *Lang*, 644 F.2d at 1238-39.

Next, TePoel argues that he was selectively prosecuted because of an "abuse of the grand jury process." A selective-prosecution challenge can be successful only if the defendant establishes that the decision to prosecute him was made on the basis of an

invidious ground such as race, religion, or the exercise of constitutional rights. *See United States v. Moore*, 543 F.3d 891, 899-900 (7th Cir. 2008); *Darif*, 446 F.3d at 708. TePoel did not even hint that any of these factors influenced his prosecution, so his motion to dismiss on that ground was frivolous.

TePoel also contends that he was denied his constitutional right to assistance of counsel. Over the course of the pretrial proceedings, a magistrate judge appointed TePoel three attorneys. The magistrate judge urged TePoel to cooperate with each of his attorneys and advised TePoel that he was not entitled to an unlimited supply of lawyers. The magistrate judge further warned TePoel that he would end up representing himself at trial if he could not get along with his counsel. Nevertheless, each relationship eventually broke down, and the magistrate judge allowed each attorney to withdraw. When the third attorney withdrew—less than two weeks before trial, which had been continued for a year while each successive lawyer got up to speed—the magistrate judge concluded that TePoel had constructively waived his right to counsel and so declined to appoint another. Nevertheless, the court later appointed a fourth attorney to act as standby counsel at trial, where TePoel represented himself pro se. Once TePoel was convicted, he requested that the court appoint the attorney who acted as standby counsel at trial to represent him at sentencing. The court obliged, but later allowed that lawyer to withdraw when TePoel became dissatisfied with her performance. TePoel once again represented himself at sentencing.

A defendant, through his actions, can constructively waive his right to counsel. *See United States v. Oreye*, 263 F.3d 669, 670 (7th Cir. 2001); *United States v. Harris*, 2 F.3d 1452, 1455 (7th Cir. 1993). A defendant makes a knowing and voluntary decision to forgo counsel if his conduct after the district court has given him a lawyer has "the effect of depriving himself of appointed counsel." *United States v. Fazzini*, 871 F.2d 635, 642 (7th Cir. 1989); *see also Harris*, 2 F.3d at 1454-55. TePoel was unwilling to cooperate with any of the four lawyers appointed for him during the course of his trial and sentencing despite the magistrate judge's warnings that failure to do so would compel TePoel to proceed pro se. TePoel's conduct in the face of the magistrate judge's admonitions demonstrates that he waived his right to counsel. *See United States v. Irorere*, 228 F.3d 816, 828 (7th Cir. 2000); *Harris*, 2 F.3d at 1455.

TePoel next contends that the district court abused its discretion in denying his recusal motion. Before sentencing, TePoel asked the judge to recuse herself, *see* 28 U.S.C. § 144, asserting that she was prejudiced against him. As evidence of this, TePoel pointed out in an affidavit that the judge sustained most of the government's objections during trial, refused to let him introduce irrelevant evidence, and remanded him to jail after the guilty verdicts. But § 144 requires the party requesting recusal to show actual bias—i.e., personal

animus or malice—on the part of the judge, *see Tezak v. United States*, 256 F.3d 702, 718 (7th Cir. 2001), and none of TePoel's assertions came close to meeting this threshhold, *see United States v. Morgan*, 384 F.3d 439, 444 (7th Cir. 2004) (noting that a judge's adverse evidentiary rulings do not establish bias); *Golant v. Levy (In re Golant)*, 239 F.3d 931, 938 (7th Cir. 2001) (explaining that loss on the merits or disagreement with judge's rulings are not evidence of bias); *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) (noting that "judicial rulings alone almost never constitute a valid basis" for a recusal motion). Thus, there was no reason for the judge to recuse herself.

TePoel also argues that the district court's application of the sentencing guidelines violated the statute of limitations. As we understand his argument, he contends that at sentencing the district court should not have considered some of his victims' losses as "relevant conduct," *see* U.S.S.G. § 1B1.3, insisting that the conduct leading to these losses occurred outside the statute of limitations and, because he could not be prosecuted for it, he should not be punished for it. TePoel did not raise a statute-of-limitations objection in the district court; thus, our review is for plain error. *See United States v. Farmer*, 543 F.3d 363, 372 (7th Cir. 2008); *United States v. Ross*, 77 F.3d 1525, 1536 (7th Cir. 1996). But this argument is a non-starter because there is no statute-of-limitations problem here. The conspiracy lasted from 1997 until 2007, and because there was an overt act within five years before the indictment, all of TePoel's activities in furtherance of the criminal enterprise are part of the conspiracy, no matter when the criminal conduct started. *United States v. Useni*, 516 F.3d 634, 655-56 (7th Cir. 2008); *United States v. Yashar*, 166 F.3d 873, 875-76 (7th Cir. 1999). Moreover, we already have determined that the statute of limitations does not restrict what the district court may consider as relevant conduct during sentencing. *See United States v. Valenti*, 121 F.3d 327, 334 (7th Cir. 1997); *see also* U.S.S.G § 1B1.3 cmt. n.1 (explaining that the "principles and limits of sentencing accountability under" the relevant-conduct guideline "are not always the same as the principles and limits of criminal liability").

Finally, we have considered TePoel's remaining arguments and conclude that each is either undeveloped or meritless.

AFFIRMED.