# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-3716

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RONALD E. BLAKE,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 02 CR 30086—**G. Patrick Murphy**, *Chief Judge.*

———————

ARGUED FEBRUARY 15, 2005—DECIDED JULY 11, 2005

———————

Before BAUER, ROVNER, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* A grand jury indicted Ronald Blake on two counts of distributing cocaine base in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B), and a petit jury convicted him on one of the counts. The conviction elevated Blake to career offender status under § 4B1.1 of the Sentencing Guidelines, and the district court sentenced Blake to 360 months' imprisonment, the lowest sentence in the applicable range. On appeal, Blake challenges his conviction on the basis of selective prosecution and seeks a remand for resentencing under *United States v. Booker*, 125 S.Ct. 738 (2005). We affirm Blake's conviction and order a

limited remand with respect to his sentence pursuant to *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005).

## I. Background

Hope Kurtz, a white woman, was arrested at the Relax Inn in Granite City, Illinois on July 3, 2002. She had the following items in her possession when arrested: several bags of marijuana; one ounce (28 grams) of cocaine; $1,500 in cash; and a gun. The arresting officers told Kurtz that she would not be prosecuted if she cooperated with them by making controlled buys from her supplier. Kurtz agreed to cooperate and identified Blake, an African-American, as her supplier. She informed the police that Blake supplied her with both cocaine and cocaine base every two to three days. On four or five occasions, Blake fronted Kurtz three or four ounces of cocaine base.

Kurtz agreed to make two controlled buys from Blake at his residence in Cahokia, Illinois. The first buy was coordinated by the Metropolitan Enforcement Group of Southern Illinois ("MEGSI"). Kurtz called Blake to arrange the buy and then made the buy on July 5, 2002, under constant visual surveillance by law enforcement. Kurtz purchased 25 grams of crack on that occasion, a relatively large quantity that prompted the DEA to investigate.[1] Under the supervision of agents from the DEA and MEGSI, Kurtz made a second buy from Blake on July 9, 2002. Kurtz wore a wire on the second occasion, which recorded her conversation with Blake as she bought 27.8 grams of crack. Blake was

---

[1] Though the jury's acquittal on Count I indicates that it did not believe that the first controlled buy took place, we include it in our facts because our focus on a selective prosecution claim is on the information the government had in its possession when it decided to prosecute.

arrested that same day and charged with two counts of distributing more than five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B).

On April 4, 2003, a jury convicted Blake on Count II for the second controlled buy, but acquitted him on Count I, which involved the first controlled buy. In light of the conviction on Count II, a prior state drug conviction, and a prior conviction for assault of a federal officer, the district court concluded that Blake was a career offender under U.S.S.G. § 4B1.1 and sentenced him to 360 months. The only issues Blake raises on appeal are selective prosecution and *Booker* error.

## II. Discussion

### A. Selective Prosecution

Blake requests dismissal of the indictment or a remand to the district court for discovery due to selective prosecution on the basis of race. Blake's theory is that the government's failure to prosecute Kurtz—a white woman found with drugs, $1,500 in cash from drug sales, and a gun—coupled with its prosecution of him—an African-American man who sold Kurtz 52.8 grams of cocaine base—amounts to race-based selective prosecution. Blake seizes on comments made by the district judge to support his claim. For example, after the jury returned its verdict and was dismissed, the judge made the following observation on the record:

> It was very difficult for this jury. I mean, everyone in here knows what the problem was. You got a young white girl who admitted to selling five ounces of cocaine a week and she's not prosecuted. And this guy is. It's not—that's a hard swallow.

Tr. April 4, 2003, at 3. The judge made a similar remark at sentencing:

I noted on the record when the jury went out, I knew they would have a hard time because we had a case where the so-called snitch was a white crack whore who was found with more dope than what the defendant was convicted of. Now I mentioned that because that is just simply the case.

Sentencing Tr. at 13. In response, the government asserts that Blake waived the argument by failing to raise it before trial and, even if the argument was preserved, it is without merit.

Courts generally presume that prosecutors faithfully and lawfully discharge their constitutional duties and, in the ordinary case, prosecutors have significant discretion to determine whether or not to prosecute. *United States v. Armstrong*, 510 U.S. 456, 464 (1996). That discretion is, of course, "subject to constitutional constraints." *Id.* (citation omitted). Notably, "the decision to prosecute may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Id.* (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)). To establish selective prosecution on an arbitrary classification such as race, a claimant must demonstrate that the prosecutorial policy "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id.* at 465 (citation omitted). "To establish a discriminatory effect in a race case, a claimant must show that similarly situated individuals of a different race were not prosecuted." *Id.*

We begin with the government's contention that Blake waived his selective prosecution claim by failing to raise it before trial. According to the government, Blake did not raise selective prosecution until five months after trial in a motion alleging ineffective assistance of counsel. The government is correct that selective prosecution claims must be raised before trial. *United States v. Jarrett*, 705 F.2d 198, 204 (7th Cir. 1983); FED. R. CRIM. P. 12(b). However, Blake

did raise the issue in a pre-trial motion to dismiss the indictment based on the government's allegedly unconstitutional plea bargaining tactics and selective prosecution. R. 42. Even though the focus of the motion was on the government's plea bargaining tactics, Blake also cited to *Armstrong*, the leading Supreme Court case on selective prosecution, for the proposition that "the decision to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." At a pre-trial hearing, the district judge denied the motion, explaining that the argument was without merit unless Blake had some evidence that the decision to prosecute was based on race. R. 51. Consequently, we reject the government's argument that Blake did not raise selective prosecution before trial and proceed to the merits of the appeal.

As noted above, Blake's argument centers on the government's failure to prosecute Kurtz. Blake contends that not only was Kurtz similarly situated to him such that she should have been prosecuted, she was more culpable than him in that she admitted to selling approximately 24 ounces of cocaine and possessing a gun while Blake was only convicted of selling 27.8 grams of crack. This argument suffers from a number of faults. First, and most importantly, Kurtz and Blake were not similarly situated. Blake was Kurtz's supplier; Kurtz was a user who likely only sold drugs to support her habit. The government differentiates between users and suppliers in thousands of drug prosecutions every year, and this case was no different. Even though Kurtz did sell drugs, there does not appear to be any question that Blake was further up the drug chain than she. Indeed, the local police promised Kurtz that she would not be prosecuted if she cooperated with them, Kurtz agreed and identified Blake as her supplier, and her controlled buys from Blake confirmed her story. In light of the foregoing circumstances, including Kurtz's valuable assistance to the government, the government had good reason to differentiate between Blake and Kurtz.

Blake also takes an artificially narrow view of his culpability. When comparing himself to Kurtz, Blake limits his focus to the quantity of drugs that the jury found him responsible for rather than considering all of the information that the prosecution had when it decided to prosecute. During two controlled buys, Blake supplied Kurtz with over 50 grams of crack in the span of three days. Those deals substantiated the information that Kurtz had given the government, namely that Blake had been supplying her with cocaine and cocaine base every few days for several months. If it was true that Blake had been supplying Kurtz with drugs, it was doubtful that she was the only person in the community that he was supplying. The government also knew that Blake had a prior conviction for possession and transportation of more than three pounds of cocaine, which suggested that Blake was not merely a novice or a user. The jury did not hear any evidence about Blake's prior involvement in the drug trade because the district judge excluded everything except the two controlled buys as unduly prejudicial under FED. R. EVID. 404(b), but the prosecution was aware of it and it gave them additional reason to conclude that Blake and Kurtz were not similarly situated. Because we see no constitutional problem with the government's decision to prosecute Blake and its decision to forego prosecution of Kurtz, we reject Blake's selective prosecution theory.

## B. Sentencing

Blake's 360-month sentence was driven by the district court's determination that he qualified as a career offender under the Sentencing Guidelines. In his sentencing brief, Blake asserts that the district judge made factual findings that run afoul of the Sixth Amendment as interpreted by *Booker* and its progeny. But this argument ignores the prior convictions exception to the *Booker/Apprendi* rule: "Any

fact (*other than a prior conviction*) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved by a jury beyond a reasonable doubt." *Booker*, 125 S.Ct. at 756 (emphasis added); *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). Nevertheless, Blake is entitled to a limited remand because "the mere mandatory application of the Guidelines—the district court's belief that it was required to impose a Guidelines sentence—constitutes error." *United States v. White*, 406 F.3d 827, 835 (7th Cir. 2005). While some cases present circumstances that obviate the need for a limited remand, *United States v. Lee*, 399 F.3d 864 (7th Cir. 2005), the following statement by the district judge in the instant case indicates that he may have given Blake a lighter sentence had he known the Guidelines were merely advisory:

> Well, I think it is obvious I take no joy, pleasure or satisfaction whatsoever in imposing this sentence on Mr. Blake. Mr. Blake deserves a sentence. He should be—he has some time coming, but I am constrained by what is here. I will commit him to the custody of the Bureau of Prisons for a term of 360 months, which is the least amount of time I can give him.

Sentencing Tr. at 7.

A further consideration for the district judge on limited remand is the Supreme Court's recent holding that sentencing courts considering factual issues related to prior convictions are "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant has assented." *Shepard v. United States*, 125 S.Ct. 1254, 1257 (2005); *United States v. McGee, et al.*, 2005 WL 1324815 (7th Cir. June 5, 2005) (directing district court to consider the effect

of *Shepard* on limited remand). Police reports or complaint applications are not appropriate sources to consult when making such determinations. *Id.* One of Blake's objections at sentencing was that his prior convictions amounted to one conviction under U.S.S.G. § 4B1.1 because they were related. The district court disagreed, apparently relying on Blake's presentence report. We have reviewed Blake's presentence report, which states that the information related to his prior convictions came from "court records." Blake PSR at 8. Considering that Blake pleaded guilty to the two prior convictions, the category of "court records" presumably includes charging documents, written plea agreements, and transcripts of plea colloquies—all sources of "conclusive significance" under *Shepard*—but it may extend beyond that into sources that are not authorized by *Shepard*. *Shepard*, 125 S.Ct. at 1262. This possible *Shepard* problem provides an additional basis to direct a limited remand with regard to Blake's sentence. If the district judge states that he relied on sources that are now improper under *Shepard*, that the portion of the presentence report he relied on in resolving Blake's objection was based on an improper source, or that he would have imposed a different sentence had he known the Guidelines were advisory, then we will vacate the original sentence and remand for resentencing. *Paladino*, 401 F.3d at 484. If the judge informs us that there was no *Shepard* problem and that he would reimpose the original sentence even under an advisory sentencing regime, "we will affirm the original sentence against a plain-error challenge provided that the sentence is reasonable . . . ." *Id.*

## III. Conclusion

For the reasons stated herein, we AFFIRM Blake's conviction and order a LIMITED REMAND with respect to his sentence.

A true Copy:

    Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—7-11-05