In the

# United States Court of Appeals

## For the Seventh Circuit

No. 05-3377

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANOUAR DARIF,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 04 CR 40047—**Joe Billy McDade**, *Chief Judge.*

ARGUED MARCH 30, 2006—DECIDED MAY 3, 2006

Before FLAUM, *Chief Judge*, and MANION and WILLIAMS, *Circuit Judges*.

FLAUM, *Chief Judge.* Defendant-Appellant Anouar Darif ("Defendant"), was charged in a three-count superceding indictment with conspiracy to commit marriage fraud, in violation of 18 U.S.C. § 371, marriage fraud, in violation of 8 U.S.C. § 1325(c), and witness tampering, in violation of 18 U.S.C. § 1512(b)(1). The first two counts were based on allegations that Defendant, a native of Morocco, paid $3000 to Dianna Kirklin ("Kirklin"), an American citizen, to marry him and help him obtain a United States visa. The third count was based on a letter that Defendant sent to Kirklin while he was in jail pending trial, in which

he urged Kirklin to contradict testimony she gave before the grand jury in Defendant's case.

Before proceeding to trial, Defendant filed a motion in limine seeking to prevent the government from introducing into evidence letters he had written to Kirklin. Defendant also filed a motion to dismiss for improper selective prosecution. The district court denied both of Defendant's motions. The district court also rejected several of Defendant's proposed jury instructions. A jury found Defendant guilty on all three counts. Defendant appeals. For the following reasons, we affirm.

## I. Background

In November 2000, Ouaffa Melliani offered Dianna Kirklin a deal: Kirklin would receive $3000 if she flew to Morocco, married Defendant, and helped Defendant obtain paperwork necessary to stay in the United States. Melliani had known Defendant while she was also living in Morocco, but Kirklin and Defendant were strangers. Defendant had tried and failed on two previous occasions to obtain a United States visa. Kirklin accepted Melliani's offer. Melliani provided Kirklin with detailed written instructions about how to behave when she arrived in Morocco, especially when dealing with the American Embassy. Melliani also gave Kirklin $1000, with the remaining $2000 to be paid when Kirklin returned from Morocco.

Kirklin flew to Morocco, arriving on Saturday, November 25, 2000. Defendant met Kirklin at the airport, holding a sign with her name written on it, and greeted her with a handshake. The following Monday, Defendant and Kirklin began visiting various government offices in Morocco to obtain the paperwork necessary to marry. On December 5, 2000, Defendant and Kirklin were married. They celebrated at a party with Defendant's family and friends. They did not

consummate the marriage and stayed in separate rooms for the remainder of Kirklin's trip. Defendant helped Kirklin fill out an I-130 Petition for Alien Relative form, which Kirklin would later submit to the Immigration and Naturalization Service ("INS") to begin the process of obtaining a visa for Defendant.

Kirklin left Morocco on December 14, 2000. Defendant remained in Morocco, waiting to obtain a United States visa. Melliani paid Kirklin the remaining $2000. On December 26, 2000, Kirklin submitted the Petition for Alien Relative form to the INS. The INS approved the petition on April 14, 2001.

On November 8, 2001, Defendant submitted to the United States Consulate in Morocco an application for a visa to enter the United States, based on his status as a spouse of a United States citizen. The consulate issued Defendant a visa that day. On December 10, 2001, Defendant presented the visa to United States Immigration in Chicago and was admitted into the United States as a spouse of a United States citizen. Defendant went to Kirklin's home in Rock Island, Illinois, where he allegedly believed he would be living. Kirklin initially told Defendant that he could not stay with her. She claims to have felt sorry for him, however, and let him live with her for three months before she asked him to leave. Defendant then moved into an apartment with Melliani. He later took a job as a long-distance truck driver, which required him to be on the road for long stretches of time. While living apart from Kirklin, Defendant claims to have corresponded with her on a regular basis, taken her out to dinner numerous times, and attended her family functions. The couple filed joint federal and state tax returns and opened a joint bank account. Defendant and Kirklin, however, did not consummate their marriage, and there was evidence that Defendant had a sexual relationship with another woman during the time he was married to Kirklin.

On June 16, 2004, Defendant and Melliani were jointly charged with conspiracy to commit marriage fraud. Defendant also was charged with a substantive count of marriage fraud. Both counts against Defendant were based on his marriage to Dianna Kirklin in December 2000. Melliani was charged with a substantive count of marriage fraud. Both counts against Melliani were based on Melliani's marriage to Jeremy Cozadd ("Cozadd") in January 2002. The charge alleged that Melliani paid Cozadd $5000 to marry her after her United States visa expired.

On September 10, 2004, Melliani plead guilty to Count Four and was sentenced to time served and two years supervised release. Defendant's case remained scheduled for trial on January 24, 2005. On December 16, 2004, the government filed a superceding indictment against Defendant. The new indictment included the conspiracy to commit marriage fraud and marriage fraud counts, and added a new count for witness tampering, which allegedly occurred in October 2004.

Defendant filed a motion to dismiss due to selective prosecution, arguing that the government acted improperly by prosecuting Defendant and Melliani, who were Arabs, and not charging the two alleged American co-conspirators, Kirklin and Cozadd. The district court denied the motion.

Defendant also filed a motion in limine regarding the marital communications privilege. Defendant requested that the district court prohibit the government from introducing correspondence between Defendant and Kirklin. The content of one of those letters was the basis for the witness tampering offense added to Defendant's superceding indictment. The district court found that the marital privilege did not apply and denied the motion.

Defendant's case went to trial on April 25, 2005. During the government's case in chief, the district court granted the government's motion to give Kirklin immunity in return for

her testimony. The district court then stated, in response to a question by defense counsel, that the marital testimonial privilege was not available to Kirklin and that she was required to testify against Defendant.

After the close of the government's evidence, the district court denied Defendant's renewed motions regarding selective prosecution and marital privilege and denied Defendant's motion for judgment of acquittal. The district court also rejected several of Defendant's proposed jury instructions on the marriage fraud counts. On April 27, 2005, the jury convicted Defendant on all three counts.

On August 5, 2005, the district court sentenced Defendant to 21 months imprisonment on each count, to run concurrently, three years supervised release, and a $300 special assessment.

## II. Discussion

### A. Marital Privileges

Defendant raises two challenges related to marital privilege: first, that the district court erred by finding that the marital communications privilege did not prevent disclosure of letters Defendant wrote to Kirklin while he was in jail; and second, that the district court erred by finding that Kirklin could not assert the marital testimonial privilege and refuse to testify as a witness for the government.

"We review the trial court's resolution of a marital privilege issue for an abuse of discretion." *United States v. Westmoreland*, 312 F.3d 302, 306 (7th Cir. 2002). "[S]pecial deference is given to the evidentiary rulings of the district court." *United States v. Lea*, 249 F.3d 632, 641 (7th Cir. 2001). If we find that evidence barred by a marital privilege was improperly admitted, "we must determine whether the error was harmless." *Westmoreland*, 312 F.3d at 309.

### 1. Marital communications privilege

The marital communications privilege, which Defendant attempted to assert before the district court, "applies only to communications made in confidence between the spouses during a valid marriage." *Lea*, 249 F.3d at 641. The privilege may be asserted by either spouse. *Id*. It "exists to ensure that spouses generally, prior to any involvement in criminal activity or a trial, feel free to communicate their deepest feelings to each other without fear of eventual exposure in a court of law." *Westmoreland*, 312 F.3d at 307 n.3.

Prior to trial, Defendant filed a motion in limine seeking to prevent the government from introducing into evidence several letters written between Defendant and Kirklin. One of these letters, written by Defendant and postmarked October 12, 2004, formed the basis of the witness tampering count. The letter stated, in relevant part:

Dianna Don't be scared for no body

I know [the INS agent] told you "in stade to have two person in prison we will have three". see just for those words that is unconstitutional. there is nothing nothing they will do to you nothing. even if you change the hole thing you told them, One: you can say I was under pressure; two: you can say that at that time you forgot to take your medecin. three: you can just say that my husband and I we were having a family problems at the time and after that we worked it out and we are just fine now. the maximum points you will have if you lie or change what you said in front of the grand jury is 4 point wich means 3 to 4 months in prison or 6 month pro or 2,500 Dollars fine. that's according to the "federal sentencing gide line" and that

for a normal person, not some one who has a permanent brain damage. and that for a crimmel case, like murder.

The district court found that the letters were not subject to the marital communications privilege because the marriage was entered into fraudulently. The district court also found the marital communications privilege inapplicable because the spouses were joint participants in the underlying marriage fraud.

We affirm the district court's decision that the marital communications privilege does not apply, based on the court's reasoning that Defendant and Kirklin were joint participants in the marriage fraud scheme. The marital communications privilege "places a limitation on truthful disclosure." *Westmoreland*, 312 F.3d at 307. However, "we have recognized an exception to the privilege when spouses are joint participants in the underlying offense." *Id.* (citing *United States v. Short*, 4 F.3d 475, 478 (7th Cir. 1993)). "[W]e do not value criminal collusion between spouses, so any confidential statements concerning a joint criminal enterprise are not protected by the privilege." *Short*, 4 F.3d at 478.

In this case, the superceding indictment alleged that Kirklin was a co-conspirator with Defendant in the underlying marriage fraud offense. In his October 12, 2004 letter to Kirklin, Defendant tried to persuade Kirklin to testify differently than she did before the grand jury and suggested certain stories Kirklin could tell. He also tried to persuade Kirklin that if she "lie[d] or change[d] what [she] said in front of the grand jury," she would receive only a short prison sentence.

Defendant maintains that the privilege was not destroyed by the joint crime exception because the October 12, 2004 letter "had nothing to do with the alleged joint criminal activity that occurred in December 2000"—*i.e.*, commission of the underlying marriage fraud. Defendant's point seems

to be that in the letter he suggested a whole new crime—witness tampering—which Kirklin had not contemplated or agreed to. According to Defendant, the joint crime exception would apply only if the letter discussed and attempted to further the marriage fraud. Defendant fails to recognize that the letter does relate to the underlying marriage fraud: in it, Defendant urged Kirklin to change her testimony at his trial to evade the marriage fraud charges and specifically referenced the grand jury proceedings at which Kirklin testified that she entered into the marriage fraudulently.[1] In sum, we find that the October 12, 2004 letter was admissible under the joint crime exception to the marital communications privilege. We therefore find it unnecessary to determine whether the privilege would also be inapplicable because Defendant and Kirklin's marriage was fraudulent.

### 2. Marital testimonial privilege

The marital testimonial privilege protects an individual from being forced to testify against his or her spouse. "The testimonial privilege looks forward with reference to the particular marriage at hand: the privilege is meant to protect against the impact of the testimony on the marriage." *Westmoreland*, 312 F.3d at 307 n.3. Only the testifying spouse can assert the privilege, and the privilege may be waived.

---

[1] Our analysis would be different if in fact the letter had no relation to the marriage fraud charges, and the letter represented the first time that Defendant suggested that Kirklin change her testimony. "The initial disclosure of a crime to one's spouse, without more, is covered by the marital communications privilege." *Westmoreland*, 312 F.3d at 308. However, "[i]f the spouse later joins the conspiracy, communications from that point certainly should not be protected." *Id.*

At Defendant's trial, Kirklin informed the district court that, if called to testify, she would assert her Fifth Amendment right to refuse to answer any questions on the ground that a truthful answer would tend to incriminate her. The government informed the court that it intended to offer Kirklin immunity and moved for an immunity order, pursuant to 18 U.S.C. §§ 6001 to 6003. The district court granted the motion.

Defendant's attorney then asked the district court whether "someone [has] the obligation to advise Miss Kirklin of her marital privilege." The district court responded that Kirklin could not assert the marital testimonial privilege for the same reasons Defendant could not assert the marital communications privilege: the marriage was fraudulent and Defendant and Kirklin were joint participants in the fraud. The district court explained this ruling to Kirklin and told her that it had "already decided that in this case you do not have a privilege not to testify." Kirklin responded, "I understand."

Defendant argues that it was error for the district court to instruct Kirklin that she could not assert the marital testimonial privilege. Defendant asserts that "Ms. Kirklin exclusively held the right not to testify against her husband; she should not have been compelled to testify as a government witness."

Defendant's argument mischaracterizes what actually happened at his trial. Kirklin was not "compelled to testify" against Defendant. She asserted her Fifth Amendment privilege against self incrimination, was offered immunity to testify, and accepted immunity. Only after she had already agreed to testify, and only at the prompting of defense counsel, did the district court inform her that the marital testimonial privilege was not available. Kirklin never attempted to assert the marital testimonial privilege herself. Defendant cannot assert the right for her, because

the testimonial privilege, unlike the communications privilege, can be waived by either spouse. Thus, we find that the district court did not commit reversible error by telling Kirklin that the privilege was unavailable to her.

## B. Selective Prosecution

Prior to trial, Defendant filed a motion to dismiss due to selective prosecution and, in the alternative, requested an opportunity to conduct discovery regarding the United States Attorney's charging decision. Defendant argued that it was improper for the government to prosecute only Defendant and Melliani, who were Arab, and not their United States citizen co-conspirators, Kirklin or Cozadd.

The district court denied the motion to dismiss and the discovery request. The district court emphasized that the government enjoys broad discretion in deciding who to prosecute. The district court found that the government reasonably concluded that Defendant and Melliani were more culpable than Kirklin and Cozadd, because they solicited Kirklin and Cozadd to effect marriage fraud.

On appeal, Defendant once again asserts that the government's decision to prosecute only Defendant and Melliani was "based upon an unjustifiable standard—the defendant's race and nationality." Defendant maintains that "the four persons involved in the alleged conspiracy were similarly situated in terms of criminal culpability," and the "only difference between the four persons was that two were Arabs, and two were U.S. citizens." Defendant asks this Court to remand his case to the district court, either to be dismissed or to allow discovery.

To show that the government engaged in improper selective prosecution, Defendant "must demonstrate that the federal prosecutorial policy 'had a discriminatory ef-

fect and that it was motivated by a discriminatory purpose.' " *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)). To make out a prima facie case of selective prosecution, which a defendant must do in order to receive an evidentiary hearing, Defendant must show that he "(1) . . . [was] singled out for prosecution while other violators similarly situated were not prosecuted; and (2) the decision to prosecute was based on an arbitrary classification such as race, religion, or the exercise of constitutional rights." *United States v. Monsoor*, 77 F.3d 1031, 1034 (7th Cir. 1996) (quoting *United States v. Cyprian*, 23 F.3d 1189, 1195 (7th Cir. 1994)) (internal quotation marks omitted).

Under this standard, we find that the district court did not abuse its discretion in denying Defendant's motion to dismiss and discovery request. The district court reasoned:

> Clearly, Defendant and Ms. Melliani, regardless of their ethnicity or religion, who solicited the marriages, paid for the marriages, and sought to gain immigration status by entering into the marriages were most culpable of the four, and it was within the discretion of the Government to prosecute them for that reason.

"We review a district court's decision to deny a motion to dismiss an indictment for an abuse of discretion." *United States v. Alanis*, 265 F.3d 576, 584 (7th Cir. 2001). We find that the district court did not abuse its discretion by determining that Defendant and Melliani were not similarly situated to the two American co-conspirators. Defendant and Melliani were arguably more culpable because they sought to gain immigration status through the fraudulent marriages. Additionally, there is evidence that the government would have prosecuted Kirklin and Cozadd, had they not agreed to accept immunity in exchange for testimony against Defendant and Melliani. Kirklin and Cozadd's decision to cooperate with the government rendered them

not "similarly situated" to Defendant and Melliani. *See Alanis*, 265 F.3d at 585 ("While a criminal defendant is certainly not required to cooperate with the government, it is axiomatic that an individual who decides not to cooperate with the government is not similarly situated to one who does cooperate."). The government's decision to offer the United States citizen spouses immunity for testifying against the foreign spouses, who the government deemed to be more culpable, falls within the government's broad prosecutorial discretion. *See, e.g.*, *United States v. Blake*, 415 F.3d 625, 627 (7th Cir. 2005).

**C. Jury Instructions**

Defendant argues that the district court should have accepted his proposed jury instructions on the marriage fraud charge. Without those instructions, Defendant contends, the jury was not informed of all the elements of the marriage fraud offense and he was thereby prejudiced. Additionally, Defendant argues that the district court should have provided a definition of "corruptly persuades" in relation to the witness tampering count.

"We review jury instructions de novo to determine whether they provide fair and accurate summaries of the law." *Savino v. C.P. Hall Co.*,199 F.3d 925, 934 (7th Cir. 1999) (citing *United States v. Tingle,* 183 F.3d 719, 729 (7th Cir. 1999)). However,

> recognizing that the formulation of jury instructions is not an exact science, the district court is given substantial discretion with respect to the precise wording of jury instructions, so long as the instruction completely and correctly states the law. Notably, the district court is under no obligation to adopt the wording of any of the litigants' proposed instructions. Reversal is warranted on this point only if an instruc-

tion misstates the law and this error misguides the jury so much that one party is prejudiced.

*Savino*,199 F.3d at 934 (citing *Tingle*, 183 F.3d at 729; *Russell v. Nat'l R.R. Passenger Corp.*, 189 F.3d 590, 594 (7th Cir. 1999); *Wichmann v. Bd. of Trustees of S. Ill. Univ.*, 180 F.3d 791, 804 (7th Cir. 1999)).

Defendant must satisfy a four-part test to demonstrate that he was entitled to his proposed jury instructions. Defendant is required to show that: "(1) the proposed instruction is a correct statement of the law; (2) the evidence in the case supports the theory of defense; (3) the theory of defense is not already part of the charge; and (4) failure to include the proposed instruction would deny the defendant a fair trial." *United States v. Chavis*, 429 F.3d 662, 671 (7th Cir. 2005).

### 1. Marriage Fraud

The district court instructed the jury that the government must prove the following to find Defendant guilty of marriage fraud:

First, that the defendant knowingly entered into a marriage with Dianna Kirklin;

Second, that the defendant knowingly entered into a marriage for the purpose of evading any provision of the immigration laws;

Third, the defendant knew or had reason to know that his conduct was unlawful.

Prior to trial, Defendant requested that the district court include the following additional instructions:

1. That at the time of the marriage, Anouar Darif did not have the intent to establish a life with Dianna Kirklin.

2.  Marriage fraud may be committed by one party to the marriage, or a person who arranged the marriage, yet the other spouse may genuinely intend to marry. If one spouse intended the marriage to be fraudulent, when the ceremony took place, but the other spouse intended it to be genuine, then the one committed marriage fraud but not the other.

3.  The marriage is legitimate so long as Anouar Darif intended to establish a life with his spouse at the time he married her, even if securing an immigration benefit was one of the factors that led him to marry her.

4.  A marriage between a foreign person and a United States citizen is not required to be more conventional, or successful, than a marriage between U.S. citizens.

The district court denied the inclusion of all four instructions. Defendant argues that this was error because all of the instructions are necessary to provide the jury with a full and accurate statement of the marriage fraud offense. Defendant bases this argument on several cases from other federal circuit courts, but none from the Seventh Circuit. *See United States v. Orellana-Blanco*, 294 F.3d 1143, 1151 (9th Cir. 2002); *United States v. Tagalicud*, 84 F.3d 1180, 1185 (9th Cir. 1996); *Cho v. Gonzalez*, 404 F.3d 96, 102-03 (1st Cir. 2005); *Bark v. Immigration & Naturalization Service*, 511 F.2d 1200, 1201-02 (9th Cir. 1975).

We find that Defendant's proposed jury instructions are not supported by the language of the statute defining the marriage fraud offense, 8 U.S.C. § 1325(c), nor by this Circuit's case law. The statute provides that "[a]ny individual who knowingly enters into a marriage for the purpose of evading any provision of the immigration laws

shall be imprisoned for not more than 5 years, or fined not more than $250,000, or both." 8 U.S.C. § 1325(c).

Defendant's first and third proposed jury instructions are misstatements of the law. Under this Circuit's precedent, the government is not required to show that Defendant lacked intent to establish a life with Kirklin; it need only show that Defendant entered into the marriage with Kirklin for the purpose of evading immigration laws. Additionally, even if Defendant "intended to establish a life with" Kirklin, he still could have entered into the marriage for purposes of evading the immigration laws—especially since Defendant and Kirklin would have to appear before the INS several years into their marriage in order for Defendant to receive a permanent green card.

The second instruction proposed by Defendant is already encompassed in the directions the district court approved. The district court instructed the jury that it must find "that the defendant *knowingly* entered into a marriage for the purpose of evading any provision of the immigration laws." (Emphasis added.) If the jury agreed with Defendant's argument that he thought he was entering a valid marriage even though Kirklin did not, then it would find, under the existing jury instructions, that defendant had not "knowingly entered into" the marriage for fraudulent purposes.

The fourth instruction proposed by Defendant is simply irrelevant. Neither the government nor the district court ever suggested that a marriage between a foreign citizen and a U.S. citizen is fraudulent unless it is conventional and successful. The key inquiry, which is reflected in the jury instructions that were used at Defendant's trial, is whether Defendant entered into the marriage for the purpose of evading the immigration laws. If the answer is yes, it does not matter how conventional or successful the marriage is, Defendant has committed marriage fraud.

Likewise, if the answer is no, it does not matter how unconventional or unsuccessful the marriage is, Defendant is innocent.

### 2. Witness Tampering

Defendant asserts that he asked the district court to include a definition of "corruptly persuade" in the jury instructions, but that the court refused to do so. Defendant never claims that he offered his own definition of the phrase.

The witness tampering offense is defined at 18 U.S.C. § 1512(b):

> (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
>
> (1) influence, delay, or prevent the testimony of any person in an official proceeding[ ]
>
> . . .
>
> shall be fined under this title or imprisoned not more than ten years, or both.

The district court instructed the jury that in order to find Defendant guilty of witness tampering, it must find that

1.  On or about October 12, 2004, Dianna Kirklin was a prospective witness;

2.  That the defendant attempted to corruptly persuade Kirklin to provide false testimony;

3.  That the defendant acted knowingly with the intent to influence Kirklin's testimony.

Defendant argues that under the Supreme Court's recent decision in *Arthur Andersen LLP v. United States*, 544 U.S. 696, 125 S. Ct. 2129 (2005), the district court's failure to define "corruptly persuade" for the jury constitutes reversible error. In *Arthur Andersen*, the Court found that a jury instruction on a witness tampering charge was insufficient because it failed to adequately convey 1) that the statute contains an intent element; and 2) that the statute requires proof of a nexus between the corrupt persuasion and a particular proceeding. *See Arthur Andersen*, 125 S. Ct. at 2136-37.

We find that Defendant has waived his right to challenge the omission of the definition of "corruptly persuade," because he did not raise it before the district court. At trial, Defendant agreed to the proposed jury instructions for the witness tampering charge. Indeed, the district court used instructions that Defendant himself proposed. *Cf. United States v. Gonzalez*, 319 F.3d 291, 298 (7th Cir. 2003) (challenge to jury instruction waived when defendants accepted challenged instruction). Defendant did ask the district court whether the jury might be confused by the term "corruptly persuade" and whether there was a standard definition of the term. The district court responded that there was not, and told Defendant to file a proposed definition if he wanted one to be included. Defendant did not file a proposed instruction, and cannot now complain that the district court erred by not including its own definition.

Finally, we note that the jury instructions used by the district court were sufficient under *Arthur Andersen*, 125 S. Ct. 2129. In that case, the defendant was charged with witness tampering based on its order to employees to shred certain documents. The Supreme Court found that the jury instructions on the charge were insufficient because they "required no type of dishonesty and required

no nexus between the persuasion used to destroy documents and any particular proceeding." *Id.* at 2136.

Those problems are absent here. The district court's jury instructions adequately convey that the jury must find that Defendant acted dishonestly. They state that the jury must find that Defendant "attempted to corruptly persuade Kirklin to provide *false* testimony" and "acted knowingly with intent to influence Kirklin's testimony." (Emphasis added.) It was also sufficiently clear to the jury that the witness tampering charge was related to "a particular proceeding." They jury instructions state that the jury must find that "on or about October 12, 2004, Dianna Kirklin was a prospective witness." On October 12, 2004, Defendant was in jail awaiting trial on the marriage fraud charges. Kirklin was a prospective witness at his trial on those charges. Thus, in this case, failure to include a definition of the term "corruptly persuade" did not deny Defendant a fair trial.

### III. Conclusion

For the foregoing reasons, we AFFIRM the rulings of the district court.

No. 05-3377                                                                    19

A true Copy:

    Teste:

                           _____
                           *Clerk of the United States Court of*
                           *Appeals for the Seventh Circuit*