NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois  60604

Submitted February 7, 2007
Decided February 8, 2007

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 05-4423

| | |
|---|---|
| UNITED STATES OF AMERICA,<br> *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| *v.* | No. 04-CR-1031 |
| SULAYMAN ODICHO,<br> *Defendant-Appellant.* | Samuel Der-Yeghiayan,<br> *Judge.* |

**O R D E R**

Sulayman Odicho signed a written confession admitting that he and two friends used $18,500 in counterfeit currency to purchase a kilogram of cocaine from Dyana Eisha, who was then 17, and that he later sold part of that cocaine for $8,700.  Odicho was charged with conspiracy to possess and deliver cocaine, *see* 21 U.S.C. §§ 846, 841(a)(1); possession of cocaine with intent to distribute, *see id.* § 841(a)(1); and passing counterfeit currency, *see* 18 U.S.C. § 472.  His indictment also sought forfeiture of the $8,700.  *See* 21 U.S.C. § 853(a).  A jury found Odicho guilty on all three charges in September 2005.  He then moved for a judgment of acquittal or, alternatively, a new trial, but both motions were denied.  The district court sentenced Odicho within the guidelines range to a total of 84 months' imprisonment and ordered him to forfeit the $8,700.  Odicho filed a notice of appeal, but his appointed counsel moves to withdraw because she cannot discern a

nonfrivolous basis for appeal. *See Anders v. California,* 386 U.S. 738 (1967). We invited Odicho to respond to counsel's motion, *see* Cir. R. 51(b), and he has done so. Our review is limited to the potential issues identified in counsel's facially adequate brief and in Odicho's response. *See United States v. Schuh,* 289 F.3d 968, 973-74 (7th Cir. 2002).

Eisha, having received immunity, testified for the government at trial. She explained that "Carlos," a man she had met only twice, recruited her to sell a kilogram of cocaine. She testified that she arranged the deal with Odicho, that she took the cocaine out to his car when he arrived at her house with two other men, that Odicho in return handed a package of money to the passenger in the front seat, and that this passenger handed the money to her. That evening, however, she realized the money was counterfeit and hid it in her closet. Her mother found it there, and her brother-in-law, a Chicago police officer, made her turn herself and the counterfeit bills into authorities. She testified that she agreed to cooperate with the government and, as part of that cooperation, placed a recorded phone call to Odicho. During the conversation, which was played for the jury, Odicho told Eisha that he learned the money was fake only after the sale had occurred.

Ryan Moore, a Secret Service agent, then testified for the government. Moore explained that he interviewed Odicho after giving him *Miranda* warnings, and then memorialized his oral statements in a written confession that Odicho reviewed and signed. In this confession, which was read to the jury without objection from defense counsel, Odicho admitted that he lied when he told Eisha that he was unaware the money he gave her was counterfeit. He acknowledged that all along he knew the money was fake, that he arranged the deal because his friend who produced the counterfeit money asked him to find someone to "rip off," and that he rubber-banded the money in preparation for the sale. Odicho also admitted that he sold some of the cocaine from Eisha for $8,700.

Nonetheless, Odicho's theory of defense was that Eisha lied about his involvement in the scheme in order to escape prosecution. In cross-examining Eisha, counsel focused partly on whether she actually had seen Odicho handling or passing the counterfeit money. Counsel also attempted to ask Agent Moore whether the government had substantiated her story by investigating Carlos or the other men involved in the transaction, but the court sustained the government's objection to this line of questioning. Finally, counsel insinuated while cross-examining Moore that the agent had induced Odicho's confession by falsely promising to help with his immigration status.

At the close of the evidence, the prosecutor submitted an "aiding and abetting" jury instruction that he had overlooked when he tendered proposed instructions at the pretrial conference. Defense counsel objected, but the district

judge, finding the instruction to be a "correct statement of the law," included it in the jury charge because the court did not want the jurors to be misled into thinking they could convict only if Odicho himself had handed the counterfeit money to Eisha.

In her *Anders* submission, appellate counsel first considers whether Odicho might argue that his confession was coerced and therefore should have been suppressed. When a defendant raises a suppression argument for the first time on appeal, and there is no indication that he intentionally failed to raise it previously, the issue is forfeited, so we would review only for plain error. Fed. R. Crim. P. 12(b), (e); *United States v. Johnson,* 415 F.3d 728, 730 (7th Cir. 2005). Here, nothing in the record even hints that Odicho's confession was coerced. On cross-examination, Agent Moore conceded that he told Odicho that he would "look into" straightening out Odicho's immigration status if he cooperated with the investigation. But investigators are not forbidden altogether from offering inducements for a confession, e.g., a promise to tell the prosecutor about the defendant's cooperation, *see United States v. Walker,* 272 F.3d 407, 412 (7th Cir. 2001), so long as the offer is not an outright and material lie, *see Hadley v. Williams,* 368 F.3d 747, 749 (7th Cir. 2004). Agent Moore explained that he indeed ran Odicho's records through the system and stopped pursuing the matter only when he realized that Odicho had missed his administrative hearing. *See Lord v. Duckworth,* 29 F.3d 1216, 1222 (7th Cir. 1994) (defendant's mistaken belief about scope of police officer's promise did not render confession involuntary). We agree with counsel, then, that an argument about the confession would be frivolous.

Counsel also considers arguing that the trial court should have granted Odicho's motion for a judgment of acquittal or ordered a new trial on the ground that Eisha's testimony was inherently unreliable. But we agree with counsel that this argument would be patently frivolous. While Eisha admitted to being an occasional drug dealer, and admitted to several inconsistencies between her trial testimony and prior sworn statements, it is within the province of the jury to choose to believe "confessed law-breakers or known liars." *United States v. Algee,* 309 F.3d 1011, 1016 (7th Cir. 2002). We will overturn a conviction based on a credibility determination only if the witness' testimony was incredible as a matter of law—meaning "impossible under the laws of nature." *United States v. Hayes*, 236 F.3d 891, 896 (7th Cir. 2001). This certainly does not characterize Eisha's testimony; in fact, Odicho's confession substantiated her story.

Counsel next considers whether Odicho could argue that it was error for the district court to preclude trial counsel from questioning Agent Moore about Carlos, the purported source of the cocaine. We would review that evidentiary ruling for an abuse of discretion. *United States v. Leahy,* 464 F.3d 773, 797 (7th Cir. 2006). Trial counsel insisted that it was imperative for the jury to know what the government

did—or did not do—to substantiate Eisha's story, but appellate counsel is correct that it would be frivolous to press this contention on appeal because the proposed inquiry was irrelevant. *See* Fed. R. Evid. 401 (relevant evidence is that "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); *Leahy,* 464 F.3d at 798. Even if it was true that the government never investigated whether Eisha actually got the cocaine *from* Carlos, that would not tend to undermine her testimony that she delivered it *to* Odicho and his cohorts. *Cf. United States v. Moore,* 936 F.2d 1508, 1521-22 (7th Cir. 1991) (police officer's initial opinion as to whether defendant should have been charged deemed irrelevant as to defendant's guilt). Furthermore, we are not concerned when the government declines to prosecute potential co-defendants unless it is alleged that the differential treatment was bestowed on a constitutionally impermissible basis such as race or religion. *See United States v. Blake,* 415 F.3d 625, 627-28 (7th Cir. 2005).

Counsel and Odicho next consider arguing that the trial court erred by giving the "aiding and abetting" jury instruction as to the counterfeiting charge. Odicho objected to this instruction at trial, so we would review the jury charge in its entirety in order to ascertain whether the jury was misled. *See United States v. Lanzotti*, 205 F.3d 951, 956 (7th Cir. 2000). Odicho's trial attorney argued that it would be unfair to give the instruction because the § 472 count in the indictment does not include a reference to the aiding and abetting statute, 18 U.S.C. § 2, and the government waited until after the close of the evidence to propose the instruction. Trial counsel contended that "aiding and abetting" had never been the government's theory of the case, and that if the instruction had been proposed before trial he would have put on a different defense (although he did not indicate what that defense would have been).

Reiterating this argument on appeal would be frivolous. An aiding and abetting instruction is proper, even if aiding and abetting is not specifically pleaded, so long as the government introduced evidence at trial that would support conviction under that theory, and the instruction creates no unfair surprise. *United States v. Fauls,* 65 F.3d 592, 599 (7th Cir. 1995). Odicho's own statement supports a conviction under an aiding and abetting theory, *see United States v. Allen*, 390 F.3d 944, 952 (7th Cir. 2004) (finding aiding and abetting instruction proper where evidence suggested that defendant was not merely present at scene of crime but instead actively participated in it), and Odicho was not unfairly surprised because the law is very clear that "[e]very indictment implicitly includes an aiding and abetting charge," *United States v. Renner,* 238 F.3d 810, 814 (7th Cir. 2001).

The remaining potential issues arise from Odicho's sentencing, and here counsel and Odicho first consider whether to challenge the calculation of the total offense level, which included no reduction for acceptance of responsibility, *see*

U.S.S.G. § 3E1.1, nor for minor participation, *see id.* § 3B1.2.  Although advisory, the guidelines still must be properly calculated.  *United States v. Robinson,* 435 F.3d 699, 701 (7th Cir. 2006).  But we agree with counsel that the proposed arguments would be frivolous.

First, we could not conclude that the district court clearly erred by denying a reduction for acceptance of responsibility.  *See United States v. Partee*, 301 F.3d 576, 580 (7th Cir. 2002).  Odicho sought the reduction on the premise that he acknowledged his wrongdoing when he gave his inculpatory statement.  But he ultimately disavowed that statement and put the government to its burden of proof at trial, thereby rendering himself generally ineligible for the reduction.  *See* U.S.S.G. § 3E1.1 cmt. n.2; *United States v. Hicks,* 368 F.3d 801, 808 (7th Cir. 2004).  It makes no difference—despite what Odicho insisted at sentencing—that he did not testify; his theory at trial was that Eisha lied about his wrongdoing to cover up her own guilt.  *See United States v. Travis*, 294 F.3d 837, 840 (7th Cir. 2002) (defendant who blamed others failed to accept responsibility).

We likewise could not conclude that the district court clearly erred by denying Odicho's request for a minor participant reduction.  *See United States v. Mendoza,* 457 F.3d 726, 729 (7th Cir. 2006).  The district court understandably found that Odicho played a significant——even central——role in the charged offenses:  he located the drug supplier, arranged the deal, purchased the cocaine with what he knew was counterfeit money, and made $8,700 selling it later.  S*ee United States v. McKee,* 389 F.3d 697, 700 (7th Cir. 2004) (defendant who was "essential component" of conspiracy was not entitled to minor participant reduction regardless of roles of co-conspirators); *United States v. Sandoval-Vasquez,* 435 F.3d 739, 745 (7th Cir. 2006) (sizable profit earned from role in conspiracy suggested defendant was not  a minor participant).

Counsel next considers whether Odicho could challenge the reasonableness of his overall prison sentence.  We agree with counsel that such an argument would be frivolous.  Odicho's sentence falls within the properly calculated guidelines range and is therefore presumed reasonable.  *See United States v. Gama-Gonzalez,* 469 F.3d 1109, 1110 (7th Cir. 2006).  We would, however, find Odicho's sentence reasonable even without that presumption.  *See United States v. Rita,* No. 05-4674, 2006 WL 1144508 (4th Cir. May 1, 2006), *cert. granted,* 75 U.S.L.W 3246 (U.S. Nov. 3, 2006) (No. 06-5754).  The district court gave meaningful consideration to the relevant factors under 18 U.S.C. § 3553(a), *see United States v. Laufle,* 433 F.3d 981, 987 (7th Cir. 2006), noting, for example, the need for a strong deterrent in light of Odicho's five previous convictions and 33 other arrests.  *See* 18 U.S.C. § 3553(a)(2)(B).  Trial counsel argued that a sentence at the low end of the advisory range would be sufficient for this purpose because Odicho was likely going to be deported—itself a form of punishment.  The district court considered this argument,

but reasonably concluded Odicho's illegal status rendered his criminal history all the more egregious. *See United States v. Orozco-Vasquez,* 469 F.3d 1101, 1109 (7th Cir. 2006) (approving of increasing sentence based on, among other things, defendant's illegal reentry); *see also United States v. Guzman,* 236 F.3d 830, 833-34 (7th Cir. 2001) (stating pre-*Booker* that "double punishment" argument nonsensically implies that "any alien who commits a crime should receive a shorter sentence than a citizen").

Finally, counsel considers appealing the forfeiture ruling, but we agree with counsel that it would be frivolous to do so. The government need only prove by a preponderance of the evidence that property qualifies under 21 U.S.C. § 853(a) as forfeitable drug proceeds. *See United States v. Melendez*, 401 F.3d 851, 856 (7th Cir. 2005). Odicho waived his right to have a jury make this finding, *see* Fed. R. Crim. P. 32.2(b)(4), and the judge based his ruling on Odicho's confession where it states in no uncertain terms that he sold part of the purchased cocaine for $8,700. That was a sufficient basis for the judge's ruling.

Accordingly, counsel's motion to withdraw is GRANTED and the appeal is DISMISSED.