**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 07-1210

UNITED STATES OF AMERICA,

Appellee,

v.

MUSA KARIM,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Boudin, Chief Judge,

Selya and Stahl, Senior Circuit Judges.

Robert A. O'Meara, by appointment of the Court, on brief for appellant.

Jeremy M. Sternberg, Assistant U.S. Attorney, and Michael J. Sullivan, United States Attorney, on brief for appellee.

June 11, 2008

**STAHL**, **Senior Circuit Judge**. Appellant Musa Karim, a Kenyan national, challenges the sufficiency of the evidence upon which a jury found him guilty of conspiracy to commit marriage fraud, in violation of 18 U.S.C. § 371. Following a three-day trial, Karim was convicted of conspiring to enter a fraudulent marriage with a United States citizen in order to reap the immigration benefits he anticipated receiving from such a union.

We review de novo an appeal contesting the sufficiency of the evidence to sustain a conviction. See United States v. Moran, 312 F.3d 480, 487 (1st Cir. 2002). Such a challenge faces a significant hurdle in that we ask only whether a reasonable jury could have found guilt beyond a reasonable doubt and we "resolve all questions of credibility and reasonable inferences in favor of the verdict." United States v. Lizardo, 445 F.3d 73, 81 (1st Cir.), cert. denied, 127 S.Ct. 524 (2006). In this case, Karim's hurdle on appeal is particularly daunting given the considerable evidence of his guilt presented at trial. Having concluded that there was sufficient evidence upon which a reasonable jury could have found Karim guilty beyond a reasonable doubt, we affirm the judgment of conviction below.

To support a guilty verdict for conspiracy under 18 U.S.C. § 371, the government must show beyond a reasonable doubt "the existence of a conspiracy, the defendant's knowledge of it, and his voluntary participation in it." United States v. Yefsky,

-2-

994 F.2d 885, 890 (1st Cir. 1993). The government alleged that the object of Karim's conspiracy was violation of 8 U.S.C. § 1325(c), which imposes criminal sanctions upon "[a]ny individual who knowingly enters into a marriage for the purpose of evading any provision of the immigration laws."

On appeal, Karim puts forth three challenges to the sufficiency of the evidence presented at trial. He argues that the government failed to prove (1) the existence of an agreement to violate the immigration laws; (2) the commission of an overt act in furtherance of the conspiracy; and (3) that the marriage was not for a "true purpose." Having reviewed the evidence presented at trial in the light most favorable to the verdict, we find these arguments meritless. Indeed, the evidence paints a picture of a transparent attempt by Karim to conspire to evade the immigration laws by marriage to a United States citizen.

Karim entered the United States from Kenya in 1999 on a student visa. When his visa expired, Karim remained in the United States without authorization. On July 26, 2005, he was arrested and detained on immigration violations pending a removal hearing before an immigration judge. In August 2005, Karim's sister, Ann Karim, with whom he lived, contacted Nicole Mann, a U.S. citizen with whom Karim had recently ended a brief, eleven-day romantic relationship. Ann Karim told Mann of Karim's incarceration and Mann agreed to visit him in jail, though the two were no longer

dating.  After the visit, Ann Karim called Mann and explained that because Karim was not a U.S. citizen, he faced deportation, and Mann could help by saying she was his girlfriend or fiancee.  Mann visited Karim again in jail soon thereafter, and Karim asked her whether she was "going to do that thing" for him.  Following that visit, Ann Karim again called Mann, and explained that Mann would have to marry Karim in order to help him remain in the United States.  Mann agreed to do so.

Initially, Mann and Ann Karim attempted to arrange a wedding ceremony at the jail where Karim was detained.  After learning that those ceremonies only took place twice a year, and the wait for the next opportunity was quite long, Karim suggested to his sister the possibility of a marriage by proxy, which could be done more quickly.  After a few logistical setbacks, Ann Karim arranged for Mann to fly to Texas in order to enter a marriage by proxy under Texas law with Musa Karim.  Ann Karim stood in for her brother at the Texas marriage ceremony, having obtained a written proxy from him.  The day before Mann flew to Texas she visited Karim in jail.  He asked her, "So you're definitely going to go tomorrow and do that thing for me, right?"  Mann replied "yes," and testified at trial that she interpreted Karim's question to mean "[t]he fake marriage.  I was going to do it."  Mann testified that she never intended for Karim to be her real husband, and she and Karim did not see each other again until Karim's criminal trial.

-4-

Karim testified that he was aware of the immigration benefits of marriage to a citizen of the United States, and, before the District Court, he asserted his eligibility for a waiver of deportation based on his marriage to Mann.

In his brief to this court, Karim first argues that the government did not prove that an agreement existed among the co-conspirators, but only that Ann Karim "somehow assisted Musa [Karim] in arranging a true marriage to Nicole Mann." However, a jury could reasonably infer from the evidence that Karim, his sister, and Mann agreed to undertake a plan to prevent Karim's deportation by arranging a fraudulent marriage. Contrary to Karim's assertion, we do not require "evidence of an explicit agreement to ground a conspiracy conviction," United States v. Pesaturo, 476 F.3d 60, 72 (1st Cir. 2007), but instead honor the "well-established legal principle that a conspiracy may be based on a tacit agreement shown from an implicit working relationship," United States v. Patrick, 248 F.3d 11, 20 (1st Cir. 2001). Here, there was ample testimony pointing to a deliberate, coordinated effort among the Karim siblings and Nicole Mann to facilitate a fraudulent marriage for immigration purposes.

Karim also argues on appeal that the government failed to prove beyond a reasonable doubt that any of the co-conspirators committed an overt act in furtherance of the conspiracy. This argument is plainly without merit, given the numerous conversations

and logistical arrangements that took place among the parties, which culminated in a trip to Texas to create the marriage by proxy.

Finally, Karim argues that the government failed to show that the marriage was not entered into "for a true purpose." He argues that though Mann testified that she viewed the marriage as a fraud, that does not mean the government proved that Karim shared this view. Instead, Karim points to his testimony that "it was always his intent to make a life with Ms. Mann and her four year old child." Karim's challenge on this point raises the question of whether conviction for conspiracy to commit marriage fraud requires a showing that the couple did not intend to establish a life together, as was instructed by the District Court in this case, or simply that the marriage was entered into in order to evade immigration laws, which tracks the language of the statute. See, e.g., United States v. Darif, 446 F.3d 701, 710 (7th Cir. 2006) ("[T]he government is not required to show that Defendant lacked intent to establish a life with Kirklin; it need only show that Defendant entered into the marriage with Kirklin for the purpose of evading immigration laws."). We need not address this question here, because it is clear on this record that a reasonable jury could conclude beyond a reasonable doubt that the marriage was entered into to evade immigration laws and that the parties did not intend to establish a life together. A reasonable jury could reach

this conclusion based on the timing of the marriage and the conversations among the parties, particularly that Karim and Mann dated for only eleven days; Karim broke off the relationship before his arrest and only reignited contact with Mann after his arrest; Ann Karim prodded Mann to help Karim with his immigration problem by marrying him; Karim repeatedly questioned Mann as to whether she was going to "do that thing for me"; and Karim and Mann failed to see each other again until Karim's criminal trial.

For the foregoing reasons, we affirm the judgment of conviction.